IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br>vs.<br><br>CHRISTOPHER BENJAMIN<br>MONTGOMERY,<br><br>　　　　　Defendant. | NO. 1:19-CR-64 MJT |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

Pending before the undersigned are the Defendant, Christopher Benjamin Montgomery's, *Pro Se Application for Compassionate Release* (Doc. #43, filed September 1, 2020) and *Pro Se Motion for Reduction in Sentence or Compassionate Release or Home Confinement* (Doc. #44, filed August 10, 2021).[1]  On June 23, 2020, Montgomery was sentenced to 75 months' imprisonment with a three year term of supervised release for violations of 21 U.S.C § 841(a)(1) (Possession With Intent to Distribute a Controlled Substance (Cocaine)) and 18 U.S.C. § 924(c)(1)(A) (Possession of a Firearm In Furtherance of a Drug Trafficking Crime).  The Government filed a response to Montgomery's motions on June 20, 2022.  (Doc. #47.)  After reviewing all applicable facts and law, the undersigned recommends granting Montgomery's motion and reducing his sentence to time served.

---

[1] This motion was referred to the undersigned United States magistrate judge on March 21, 2024, for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.  28 U.S.C. § 636(b)(1)(B); E.D. TEX. LOCAL R. CR-59(a).

## I.    ISSUES PRESENTED

Montgomery argues that he should receive compassionate release due to COVID-19 and chronic health concerns. (Doc. #43, 44.) The Government responds that Montgomery's concerns do not rise to the level of extraordinary and compelling circumstances and that the 18 U.S.C. § 3553(a) factors weigh against release.[2] (Doc. #47.)

## II.    LEGAL STANDARD

Section 3582(c)(1)(A) "authorize[s] a sentence reduction where: (1) 'extraordinary and compelling reasons warrant such a reduction,' (2) 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission,' and (3) such a reduction is appropriate 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *United States v. Shkambi*, 993 F.3d 388, 389 (5th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). Section 3582(c)(1)(A) does not define the "extraordinary and compelling reasons" that may merit compassionate release. The Sentencing Commission ("The Commission"), however, has the authority to "promulgate general policy statements … that describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Williams*, No. 3:18-CR-0291-B-2, 2021 WL 1865005, at *2 (N.D. Tex. 2021) (quoting *Shkambi*, 993 F.3d at 391). On November 1, 2023, The Commission issued an amended policy statement, U.S.S.G. § 1B1.13, setting forth the circumstances that are considered "extraordinary and compelling reasons." These include the defendant's medical circumstances, age, family circumstances, whether the defendant is a victim of abuse, "other reasons," and whether he is serving an unusually long sentence. *See* U.S.S.G. §

---

[2] The Government's response mistakenly refers to the "18 U.S.C. § 5583(a) factors."

1B1.13(b). As of November 1, 2023, policy statement 1B1.13 applies to motions filed by the Director of the BOP and motions filed by the defendant. U.S.S.G. § 1B1.13(a).

The Fifth Circuit has also addressed the issue. As the Fifth Circuit explained, "extraordinary" means "beyond or out of the common order," "remarkable," and "singular." *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023). "Compelling," in turn, "means to drive or urge with force, or irresistibly, to force, and to subjugate." *Id.* Such reductions are permissible only upon a showing that the prisoner "face[s] some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Id.* Upon successfully raising an extraordinary or compelling reason, a court may grant relief only if the prisoner also demonstrates that the reduction is otherwise consistent with The Commission's policy statement. 18 U.S.C. § 3582(c)(1)(A).

### III. BACKGROUND

Montgomery was born on June 29, 1984. (Doc. #35, pg. 2.) He has prior criminal convictions for Possession of Marijuana (age 19), Possession of Cocaine (age 19), Possession of Marijuana (age 19), Burglary of Habitation (age 20), Possession of Cocaine Less Than One Gram (age 24), Failure to Identify (age 25), Possession of Controlled Substance (age 25), and Evading Arrest (age 26). (Dkt. #35, 7-9.)

In this case, Montgomery pleaded guilty to Counts 1 and 2 of the Indictment pursuant to a Rule 11(c)(1)(C) binding Plea Agreement and agreed to a sentence of 15 months' imprisonment on Count 1 and 60 months' imprisonment on Count 2, which was ordered to run consecutively to Count 1. (Doc. No. 35, p. 16.) He stipulated to the following in the Factual Basis for his guilty plea:

> On December 18, 2018, officers with the Beaumont Police Department responded to a complaint that a person, later identified as Montgomery, was causing a disturbance at a residence located in Beaumont. The information police received

3

> indicated Montgomery had a firearm and drugs on him. Police responded to the residence and encountered Montgomery sitting in a vehicle parked in the driveway. As the police approached the vehicle, Montgomery attempted to exit his vehicle and get into a wheelchair located next the vehicle. An officer standing at the passenger side window observed a large bag of what he believed to be marijuana in plain view on the passenger seat along with what appeared to be cocaine. Officers also noticed the smell of PCP in the vehicle. Police detained Montgomery based on those observations and conducted a search of the vehicle. Upon searching the vehicle, officers found approximately 27 grams of suspected PCP, 112 grams of powder cocaine, eight (8) ounces of marijuana, and an assortment of pills. Moreover, officers found one Bryco Arms, Model: Jennings Nine-CA, .9mm caliber pistol, bearing serial number 1083202 under the driver's seat where Montgomery was previously sitting when police first encountered him. A digital scale, and a hot plate with baking powder residue on it were found in the back seat. Several of Montgomery's debit cards and medication bottles were found in the car.

(*Id.* at p. 4.) At the time of sentencing, Montgomery's criminal convictions resulted in a criminal history score of 12, which established a criminal history category score of V. (Doc. #35, p. 10.) The BOP inmate locator website indicates that he is incarcerated at the Medical Center for Federal Prisoners in Springfield, Missouri, with a projected release date of August 16, 2024.

Prior to his criminal behavior that forms the basis of this case, Montgomery was shot seven times in the stomach in 2014, which resulted in paralysis of his lower extremities requiring the use of a wheelchair. (Doc. #35, p. 14.) He also has a history of chronic osteomyelitis (infection caused by bacteria or fungi on the spine), Stage 4 bed wound (ulcer) that required surgical debridement to the bone, hypertension, insomnia, epilepsy, uncontrollable bowel movements that require the use of adult diapers, and chronic urinary tract infections from a catheter. The BOP rates Montgomery as a care level 4 inmate, which is a meaningful designation because it is the BOP's highest classification for medical care. According to the BOP's *Clinical Practice Guidance*, dated May 2019, Care Level 4 inmates require services available only at a BOP Medical Referral Center (MRC), which provides significantly enhanced medical services and limited inpatient care, and the prisoner's functioning may be so severely impaired as to require 24-hour skilled nursing care

4

or nursing assistance. *See* www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last accessed March 26, 2024).

## IV. ANALYSIS

A prisoner seeking compassionate release must overcome four hurdles: (1) exhaustion of administrative remedies, (2) extraordinary and compelling reasons must justify a sentence reduction; (3) reduction must be consistent with applicable policy statements issued by Sentencing Commission; and (4) the Defendant must persuade the district court that his early release would be consistent with statutory sentencing factors. 18 U.S.C.A. §§ 3582(c)(1)(A), 3553(a); *United States v. Rollins*, 53 F.4th 353 (5th Cir. 2022).

### A. *Exhaustion of Administrative Remedies*

Before seeking relief from the court, a defendant must first submit a request to the facility's warden where he is housed to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait 30 days from the warden's receipt of his request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020). After 30 days have passed or the defendant has exhausted all administrative rights to appeal the BOP's failure to move on his behalf, a defendant may ask a court for a sentence reduction under section 3582(c)(1)(A). Here, the Government concedes that Montgomery made a request to the warden at the Federal Correctional Institution on June 15, 2021, and the warden denied his request. (Doc. #47, p. 2.) Therefore, Montgomery has satisfied the administrative exhaustion requirement.

### B. *Extraordinary and Compelling*

Extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)," "a serious physical or medical condition," "a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the

5

aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13. In addition, a defendant may seek release if he is suffering from a medical condition that requires long term or specialized medical that is not being provided. *Id.* Lastly, extraordinary and compelling reasons exist if the facility where the defendant is housed is affected or at imminent risk of being affected by an ongoing outbreak of an infectious disease or public health emergency and the defendant is at an increased risk of suffering severe medical complications or death and such risk cannot be adequately mitigated in a timely manner. *Id.*

1. COVID

A generalized fear of COVID does not automatically entitle a prisoner to release. *See, e.g., United States v. Martinez*, 2024 WL 658952, at *1 (5th Cir. 2024) (fear of COVID-19, even with comorbidities, was not extraordinary and compelling); *United States v. Rodriguez*, 27 F.4th 1097, 1100-01 (5th Cir. 2022); *United States v. Thompson*, 984 F.3d 431, 435 (5th Cir. 2021); *United States v. Turner*, No. 2:15-CR-1-KS-MTP, 2022 WL 1072880, at *3 (S.D. Miss. 2022) (if the Court were to release every prisoner at risk of contracting COVID-19, it "would then be obligated to release every prisoner"). "[I]nternational and domestic health authorities, particularly the World Health Organization, the United States Centers for Disease Control and Prevention, and the federal government, have made clear that the COVID-19 pandemic has ended." *United States v. Casey*, No. 1:15-CR-1-LG-RHW-2, 2023 WL 4306765, at *2 (S.D. Miss. June 30, 2023) (quoting *United States v. Ruiz*, No. 4:19CR269-DSJ, 2023 WL 3628265, at *5 (E.D. Tex. May 24, 2023) (collecting resources)); *see also United States v. Ford*, No. 1:16-CR-19-HAB, 2023 WL 3477168, at *5 (N.D. Ind. 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination" (quotations omitted)). Moreover, Montgomery is fully vaccinated, which provides some

6

protection from risks associated with Covid. (Doc. #47, p. 2.) *See United States v. Grummer*, 519 F. Supp. 3d 760 (S.D. Cal. 2021) (denying compassionate release to a vaccinated defendant with several chronic medical conditions); *United States v. Wakefield*, No. 1:19-cr-00095-MR-WCM, 2021 WL 640690, at *3 (W.D.N.C. 2021) (denying compassionate release to a defendant presenting with obesity, diabetes, and hypertension who received his first dose but had also previously tested positive); *United States v. Smith*, No. 17-CR-20753, 2021 WL 364636, at *2 (E.D. Mich. 2021) ("[A]bsent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A).")

2.   Other Severe Health Concerns

In addition to the threat of COVID, Montgomery claims that he meets the compassionate release criteria due to a litany of chronic health conditions outlined in Section II above. (Doc. #44, p. 2) (hypertension, epilepsy, rectum failure, a stage 4 "large bed wound done to the bone (ulcer)" that has resulted in osteomyelitis, and paralysis, which has him confined to a wheelchair). He underwent surgical debridement of his ulcer (to the bone) on October 5, 2021. (Doc. 47-2, p. 247.) The Government addresses these ailments singularly to respond that Montgomery's health concerns do not satisfy the extraordinary or compelling standard, however when Montgomery's health concerns are considered in combination, the undersigned finds that the standard is satisfied.

The Government provided nearly 900 pages of BOP medical records that catalogue a series of severe health concerns, but it does not appear that Montgomery suffers from a *terminal* illness, which under the commentary to the U.S.S.G. is defined as "a serious and advanced illness with an end of life trajectory." U.S.S.G § 1B1.13 cmt. n.1(A)(i). However, even though Montgomery's health concerns are not *terminal*, the undersigned finds that they are sufficient to warrant release under § 3582(c)(1)(A)(i) because they substantially diminish his ability to provide self-care in the

7

institutional setting. *See Thompson*, 984 F.3d at 433 (recognizing a "[m]edical [c]ondition" might be sufficiently serious to warrant release under § 3582(c)(1)(A) where the defendant has a terminal illness or a condition "that substantially diminishes the ability of the defendant to provide self-care") (quoting U.S.S.G. § 1B1.13 cmt n.1(A)); *see also United States v. Bravo-Ziranda*, No. 3:18-CR-00415-K-1, 2023 WL 4494348, at *4 (N.D. Tex. July 10, 2023) (finding extraordinary and compelling reason to justify a sentence reduction where the defendant has a Care Level rating of 4); *United States v. Helmstetter*, No. CR 92-469, 2023 WL 2810707, at *3 (E.D. La. Apr. 6, 2023) (finding a Care Level 3 defendant with Stage IV kidney disease showed extraordinary and compelling reasons for compassionate release). Moreover, Montgomery has serious health concerns that were not foreseeable at the time of sentencing. (*See* Doc. #35, p. 14) (PSR mentions paralysis, but does not include chronic urinary tract infections, uncontrollable bowels, or osteomyelitis among health concerns).

Accordingly, the undersigned finds that Montgomery has shown "extraordinary and compelling reasons" to warrant a sentence reduction under § 3582(c)(1)(A).

### C. § 3553 Sentencing Factors and Sentencing Commission Guidelines

Next the court must determine if the extraordinary and compelling reasons outweigh the § 3553(a) factors to warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Rivas*, 833 F. App'x 556, 557 (5th Cir. 2020) (per curiam) ("[I]f a court finds 'an extraordinary and compelling reason for compassionate release,' then it must 'provide specific factual reasons, including but not limited to due consideration of the § 3553(a) factors, for its decision.' ") (quoting Chambliss, 948 F.3d at 693) (footnote omitted); *United States v. Sanchez-Chavez*, 2021 WL 5804279, at *3 (E.D. Tex. 2021). The § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—

>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for … the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines … ;
> (5) any pertinent policy statement ... issued by the Sentencing Commission ...;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The undersigned has considered these factors and finds they weigh in favor of compassionate release for the following reasons.

Montgomery was held accountable for a converted drug weight of 67.68 kilograms and carrying a firearm in furtherance of a drug trafficking crime. (Doc. 35, p. 5.) His criminal history is concerning and the amount of drugs involved is significant—especially considering he possessed a firearm in furtherance to his drug trafficking activity. Accordingly, the undersigned finds that the nature and circumstances of the offense and history and characteristics of the Defendant weigh against release. *See United States v. Martinez*, 832 F. App'x 906, 906 (5th Cir. 2021) (per curiam) (finding "[i]t was not unreasonable for [a] court to place greater weight on the seriousness of [the] offense, including the fact that a dangerous weapon was involved in the criminal activity" when it denied compassionate release); *see also United States v. Brown*, 829 F. App'x 695, 696 (5th Cir. 2020) (per curiam) (finding "[i]t was not unreasonable for the district court to afford greater weight to [the defendant's] history and characteristics, the amount of time served on his sentence, and the need to protect the public from further crimes by [the defendant] than the weight it placed upon his medical issues, the impact of the pandemic at [the prison] and the BOP's response to the pandemic").

Next, under § 3553(a)(2)(A), the undersigned must address the seriousness of the offense, respect for the law, and providing a just punishment. The BOP inmate locator website states that Montgomery is scheduled for release on August 16, 2024. *See* https://www.bop.gov/inmateloc/ (last visited March 18, 2023). He has served roughly 95 percent—the lion's share—of his sentence. This factor weighs in favor of release. *Thompson*, 984 F.3d at 434–35.

Section 3553(a)(3) and (4) relates to the sentence imposed. The court notes that Montgomery's release date is imminent. Therefore, the undersigned finds this factor does not weigh in favor or against release.

Section 3553(a)(2)(C) requires the court evaluate the need to protect the public from further crimes by Montgomery. Montgomery has not received any incident reports while incarcerated.[3] Hopefully by now, Montgomery has benefited from the BOP's rehabilitation efforts to reduce recidivism. The undersigned finds that whatever risk to the community Montgomery poses *today* is the same risk he will pose four months from now upon release. Therefore, this factor also weighs in favor of release.

Finally, the applicable policy statement, U.S.S.G. § 1B1.13, provides that a court may reduce the term of imprisonment after considering the § 3553(1) factors if the court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." 1 U.S.S.G. § 1B1.13. The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." The standard is met if the defendant is: (1) suffering from

---

[3] Montgomery's motions were filed in 2020 and 2021. The response letter provided to the court by Montgomery's probation officer is dated June 14, 2021, and indicates that he has no incident reports while incarcerated. If the Government is aware of any recent infractions or relevant evidence, it is instructed to supplement the evidentiary record via objections to this Report and Recommendation.

a serious physical or medical condition, (2) suffering from a serious functional or cognitive impairment, or (3) experiencing deteriorating physical mental health because of the aging process, any of which substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility, and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). Montgomery's health concerns are serious, and he suffers serious functional impairment (*i.e*, inability to walk or control bowel movements). Accordingly, the undersigned finds that the relevant Sentencing Guidelines support release.

## V.  RECOMMENDATION

The "burden falls on the defendant to convince the [court] to exercise discretion to grant the motion for compassionate release." *Ward v United States*, 11 F.4th 354, 359–60 (5th Cir. 2021). The defendant must show "an 'extraordinary and compelling' reason for a sentence reduction and that a reduction is consistent with the section 3553(a) factors." *United States v McFadden*, 2022 WL 715489, *2 (5th Cir 2022). Here, the court finds that Montgomery's severe health concerns establish extraordinary and compelling reasons to support compassionate release. After considering all other applicable factors, the undersigned recommends GRANTING Montgomery's motions (Doc. #43 and 45.) *See United States v. Bravo-Ziranda*, No. 3:18-CR-00415-K-1, 2023 WL 4494348, at *6 (N.D. Tex. July 10, 2023) (finding the defendant's offense was very serious, but the applicable § 3553(a) factors supported his request for compassionate release); *United States v. Cantu*, 423 F. Supp. 3d 345, 354-55 (S.D. Tex. 2019) (same). Having determined that extraordinary and compelling reasons justify release and considering all other applicable § 3553 factors, the undersigned recommends granting Montgomery's motions (Doc. #43 and 44) and reduce his sentence under 18 U.S.C. § 3582(c)(1)(A) to time served, and order that he be released from custody (upon adoption of this report and recommendation) under the previously imposed conditions of supervised release.

11

## VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report, and (4) be no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(2); E.D. TEX. LOCAL R. CR-59(c). A party who objects to this Report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to *de novo* review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 3rd day of April, 2024.

_____
Zack Hawthorn
United States Magistrate Judge